Mr. Gunning, good to have you with us, sir. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Ben Gunning, and I represent Plaintiff Appellant Matthew James Griffin. I would like to reserve three minutes for rebuttal. Very good. North Carolina's administrative remedy procedure set a 90-day window for Mr. Griffin to submit his involuntary sedation grievance. The procedure also limited Mr. Griffin to only one grievance at either Step 1 or Step 2 at a time. In this case, prison officials kept blocking grievances in the system for the entirety of Mr. Griffin's 90-day window. This complete block on Mr. Griffin's operative grievance is what makes this case unlike this circuit's recent decision in Eaton. As in Eaton, the combined effect of prison policies and prison officials' conduct rendered administrative remedies functionally unavailable to Mr. Griffin's involuntary sedation grievance. Can I ask you a question? So the problem here, as you see it, is sort of the intersection, the combined effect of the 90-day rule and the one-at-a-time rule. But I find this case very difficult because the record is so very thin. And I am trying to figure out why we know that when Mr. Griffin resubmitted his prison grievance in, I think it was April 2016, how do we know that wasn't timely? Like I can't find anything in the policy that addresses, I mean, the policy says if there's been a time lapse of more than 90 days, it can be dismissed. But there wasn't a time lapse of more than 90 days between the alleged event and submission of the grievance. He did submit it three days afterwards. And then the policy also says an inmate may submit a new grievance after a pending grievance has completed step two. And it doesn't say anything about when. There's no time limit. So how do we all know that this was untimely? So all we know with respect to that resubmission is what the screening officer said in rejecting that resubmission. And there the screening officer's response said that the rejection reason was exceeds 90-day limit. But there's no, we don't have an affidavit or anything from a prison official responsible for this telling us how this time limit is supposed to work in conjunction with the one-at-a-time rule. So that's correct, Your Honor. So I believe we're left with two interpretations. The district court didn't make a finding that this was not a timely filed grievance in April, did it? No, Your Honor. The district court found that Mr. Griffin, that he, even though he resubmitted it, the district court didn't address that. The district court said the problem is, I think the district court said, I'm not saying that it's untimely. I'm just saying you need to go through steps two and three after the screening officer said it was untimely. Yes, Your Honor. That's what the district court said on the rule 60 motion. That is an interpretation that we believe is irreconcilable with the grievance procedure. The grievance procedure says nothing about a process for a prisoner to appeal from the rejection of a grievance. And that is an interpretation that the defendants haven't even raised on appeal. Can I just ask you one more question about whether or not this was untimely? So when he resubmits he attaches what purports to be an official North Carolina form L-22 that, and the form itself says we're going to equitably toll the 90-day period while your grievances are pending. What's this about? Is there equitable tolling? Because that would make so much sense. Is that a thing? So, Your Honor, the trouble is that the grievance procedure says nothing about equitable tolling. As you mentioned, that North Carolina grievance tracking form indicates to prisoners that there is equitable tolling. Is there? How can we be doing this case and not knowing whether there's equitable tolling or not? So I think we're left with two possible interpretations. Either there is equitable tolling and prison officials violated that equitable tolling provision when they rejected Mr. Griffin's resubmission, which would constitute thwarting that rendered the grievance procedure unavailable to Mr. Griffin's involuntary sedation grievance. Or there's not equitable tolling and we're left with the issue that there was a block on Mr. Griffin's involuntary sedation grievance at all times during the window that North Carolina provided for him to submit that involuntary sedation. So the way, I'm going to stop this in one minute, but we are is we don't know whether there's equitable tolling in this as part of this process. And we also don't know really whether his April filing was timely or not. We do know that a screening officer said it's not timely, but that was not. And I'm not making, I don't mean to imply anything about whether it should have been appealed, but it was not appealed. So we have really no official statement from anyone about the timeliness of that. Okay. Right. So all we have is the actual practice and what the prison officials applied in this case, which was their rejection of that resubmission on the grounds that it exceeds the 90-day time limit. So as I mentioned, so that under either interpretation, whether or not there's some point violated their rules in the processing of Mr. Griffin's involuntary sedation grievance, either they rejected his resubmission incorrectly, or they, I guess, even if that, even if the rejection was correct, they violated their rules at several steps in keeping a block, keeping blocking grievances in the pipeline at all times during that window in which Mr. Griffin could have submitted his... At what point in time did you get this thing? I apologize, could you repeat that? At what point in time did your firm get involved in the representation here? On appeal, Your Honor. I don't know, but where, how far, immediately, where was it? So I... How did you get into it? I believe, Your Honor, it was, it would have been... I apologize, I can double check that on rebuttal. It had nothing to do with developing the record that we have. What we have here is just what is in the district court. Yes, Your Honor. That's all you had. Yes, that's... You made no efforts to... There's a rule, 10E of the appellate procedure, for example, you can move to supplement the record on appeal. It's hard to get something done that way, but it is permissible, but you That's correct, Your Honor. I think what we have on appeal is the record that was before the district court based on the submissions of the parties at the district court level. We appreciate Judge Harris's concerns that the record seems inadequate. Yes, Your Honor. I believe the... The only thing you... You can't suggest anything other than just what? Send it in the back? You would send it in the back? So, Your Honor, we believe that... We believe that remand would be inappropriate in this case because it... I guess for two reasons. That it is the defendant's burden to... It is the defendant's burden to show that Mr. Griffin failed to exhaust available administrative remedies. And at the district court level, the district court converted the defendant's motions to dismiss into motions for summary judgment. Both parties submitted evidence and argument on the... On the exhaustion issue, including the availability issue that Mr. Griffin had been arguing since his... Had been raising since his complaint. And even with that opportunity, the defendants did not... Did not submit any... Did not put forward any evidence of these alternative theories of availability. Either that they've now raised on appeal or under this alternative equitable tolling provision that Your Honor has mentioned. And because of that, our position... We believe that that's remanding back to the district court for the exhaustion issue would be giving the defendants additional bites at the apple when they already had the opportunity. They already had the opportunity. And I feel like this case was sort of argued by both parties on the premise that, look, there is no way to file a timely grievance if you have prior grievances blocking in the system for more than 90 days. You're just out of luck. You're not going to be able to file a grievance. And it's that sort of systemic effect that makes the grievance process unavailable. If that's not true, if it turns out like there's equitable tolling or the 90-day clock doesn't work that way, I don't know on what grounds we could say this was an unavailable process. And I'm not sure it's enough. If someone made a mistake in denying a grievance, I don't think that... Is that enough to say the process is unavailable? So I believe it is, Your Honor, because there was... Because our position is that there was no way for Mr. Griffin to obtain recourse for that mistaken interpretation if it was, in fact, mistaken. Let me just ask you to respond to, I think, the argument that's being made by the other side that, looking at the dates, the chronology, your client filed his grievance regarding the kosher meals on October 27th, 2015, and two days later, the grievance was accepted. Under the regulations, when they fail to act upon it within 20 days, the regulations indicate that he had the ability to appeal, to move it on to Step 2. Now, they didn't move it on to Step 2 until February, and why, we don't know. But what's your response to the argument that he had the power to do that as of, whatever that is, November 13th or 21st, whatever the date is? Yes, Your Honor. So the problem with this option that the defendants have identified on appeal is that it does not functionally exist in the grievance procedure, in actual practice, or in the verbal communications of prison officials. And I think an important starting point is Ross's instruction that what matter to the availability analysis are the facts on the ground, even despite what regulations or grievance procedures made promise. But even looking to the grievance procedure itself, Mr. Griffin, in attempting to navigate this procedure, would be confronted with conflicting provisions. To be sure, he would find the provision the defendants have identified regarding this de facto denial. But even in that same Section 307 on time limits, he would be confronted with the earlier provision that if prison officials fail to comply with their time limits, the grievance will be forwarded to the next step for review. And if Mr. Griffin looked further into the grievance review procedure, Section 310, he would find what is the only mechanism for appeal discussed in the grievance procedure. This appeal must be made in writing on Form DC-410, the same form on which Mr. Griffin receives the prison official's written response to his grievance. Let me interrupt you there because I think this is also a question about the record that's not entirely clear. I'm looking at Supplemental JA-5, which is one of those examples where there's the appeal noted on the Form DC-410A, and that's Numbers 20 through 34. I think that's what you're referring to, which is where it's directed and expected that when you receive the grievance back and told it's been denied, you can check the box. But of course, if they haven't acted upon it, you don't have that piece of paper. Is it required that it be the actual piece of paper that was submitted, or could he have simply asked for another DC-410A and filled it out himself? In other words, would that have been sufficient to move it on to the next step? Your Honor, I think the trouble is that the grievance procedure does not offer any guidance as to that possibility, rendering the grievance procedure, under that proposed interpretation, rendering that grievance procedure opaque. That is, creating this procedure that is unknowable and unnavigable by a prisoner attempting to navigate it in real time. And that point also ties into the evidence of actual practice that we do have in this case, which is that in every appeal in this record, Mr. Griffin appealed through that 310B1 and C1 mechanism, receiving the prison official's written response and signing and noticing his appeal immediately below that. And indeed, not only that, but the record also contains two examples of prison officials applying the conflicting provision 307C regarding automatic forwarding, both with respect to their automatic forwarding of his kosher diet grievance due to the, quote, due to the timeframe violation, as well as the processing of a subsequent grievance. So the actual practice bears out no evidence of this appeal from the absence of a response, and in fact bears out that the only ways that appeals have proceeded on the record is through these inconsistent procedures and mechanisms. And to the final point, looking to verbal communications of prison officials, when Mr. Griffin reached, when Mr. Griffin affirmatively reached out to the prison screening officer in January about the possible resubmission of his involuntary sedation grievance, this prison screening, the prison screening officer said nothing about any of these options now argued by the defendants on appeal, nor did the screening officer, nor did the, what the screening officer strongly suggested was that Mr. Griffin had to involuntary sedation grievance could not be resubmitted until all pending grievances had completed step two. And that, and that is that, so looking to the grievance procedure itself, actual practice, and those verbal instructions is what makes clear that the options identified by the defendants for the first time on appeal did not functionally exist, and at a minimum were so, were so unnavigable and unknowable by Mr. Griffin acting, navigating, attempting to navigate this system without the benefit of counsel and hindsight as to be opaque and therefore functionally unavailable. Can I ask you a question? You just said made me think of it because I actually thought Mr. Griffin's pro se filings were excellent. Did he, and he really did lay out the whole kind of theory that you, the whole theory for unavailability, the kind of intersection of these two rules, but it, did he before the district court, did he argue that there was no way to appeal through steps two and three, this rejection from April or May 3rd, 2016 on timeliness grounds? Did he say, because the district court seems to have thought that he's not contesting that he failed to exhaust that one all the way through, instead he's saying, doesn't matter, this whole process was unavailable to me because there was no way for me to file a timely grievance. And Your Honor, I apologize, I see my time has expired, but if I might answer your question. You answer all questions. You stay there and answer questions. Thank you, Your Honor. But Mr. Griffin did not present that argument, but he didn't have, the opportunity to do so, because it was not, it was not at the first opportunity in ruling on Mr., on the defendant's motions for summary judgment, but not until ruling on the Rule 60 motion that Mr. Griffin had raised, where the, where the district court offered this alternative, this alternative theory that, that isn't, that isn't borne out in the written grievance procedure itself. It just seems, the reason I'm asking is not to try to catch anyone in a waiver. This also seems to be something that the record doesn't really speak to. What, what, what Mr. Griffin was supposed to do once this thing came back, rejected as untimely, whether there was anything he could do, and if so, what? We just don't really have anything on that. Because, because, as you say, because of the posture, that by the time the district court got to this, you know, he hadn't argued it, and it just wasn't in front of the district court, and so, okay. And if I could just, may I respond to that briefly, Your Honor? I would just direct the court in the grievance procedure itself. I believe the relevant provision there is Section 310A, I believe it's 310A6, which, which talks about the, which talks about the rejection, the rejection of a grievance and providing notice, but it provides no, no opportunity or no, no contemplation of an opportunity for the, for a prisoner to appeal that. It contains this language about, it contains this language that a, that the facility head may in their discretion review, but then it goes on to, it does not contemplate a rule for the prisoner in this process until the facility head has independently exercised that discretion, at which point the facility head would offer this opportunity to the, to the prisoner, which the prisoner might, might decline, which would not make sense if it was implicit in this procedure that the prisoner had earlier asked for that opportunity. And unless there are any further questions, Your Honor, I'll reserve the remainder of my time for rebuttal. Thank you very much, sir. You saved a couple minutes, three minutes, yeah. Ms. Brennan? Good morning, Your Honors, and may it please the court. I'm Stephanie Brennan from the North for Dr. Kahn, who will be addressing the court next. Except for who? Whose counsel will be addressing the court? Dr. Kahn. Very good. There's no dispute in this case that the PLRA requires exhaustion of all available remedies and that plaintiff failed to exhaust. The plaintiff contends under very fact-specific circumstances that the two rules mentioned. Can I just, I hate to stop here. No, you're fine. I had actually thought that we, that there, that you were right in that there is no dispute that there was a failure to exhaust because this April resubmission was not taken through all three levels. But your colleague on the other side says there was no process for taking it through levels two and three. What about that? Well, we dispute that there was no process, that there was, we believe there was a process and that it was available to plaintiff. Plaintiff could have appealed the de facto denials. No, no, not that one. Could he have appealed the denial of his resubmission, which he filed in April 2016 and it was denied? That was rejected as untimely and, but under the court's precedent and Woodford and other cases, he has an obligation to do it correctly and properly under the rules as they exist. So what was he supposed to do with this? Well, there's a number of cases that say if they do not follow, if a pro se or a PLRA person does not go through the process because the rules are not followed, then there's the failure to properly exhaust. I'm just asking, was there any way for him to get this denial, not a denial, this rejection of his grievance on, in May, May 3rd, 2016, was there any way for him to get that reviewed? No, Your Honor, I don't believe there would have been. Didn't the district court kind of hold that that was the reason he hadn't exhausted, was that he didn't take this through steps two and three? Well, I read it to say that the district court was following the case law that says that if you haven't done that, you have not fully exhausted and if you can't. He hadn't fully exhausted because he didn't take this through steps two and three. Right, and the reason he. There was no way to take it through steps two. Right, but the reason that there was no opportunity to do so is that he didn't timely file it in the first place. So that would have been a necessary. I mean, that seems hopelessly circular. Perhaps I misread the district court, but I thought the district court said, I'm not saying this was untimely. That is not, I didn't say that. I think he even said, Mr. Griffin, you're saying I called this untimely. I did not call it untimely. I'm just saying you didn't take this thing through steps two and three. And now you're saying there was no way to take it through steps two and three. Well, I think that that is correct, that the district court didn't. I had a catch 22. We used to call those things. Well, I think that that's a situation that the case law provides for all PLRA plaintiffs. They are obligated to follow the steps as they're set out with the procedural rules. Well, they said they weren't available. It is available. It's just it would have had to be a timely filing at step one. So you have to follow all of the rules. And one of the rules that is necessary to follow is that the first step has to be timely.  So the fact that he did not timely file at step one prevented him from taking the later steps. I think what the district court was saying is he didn't complete the grievance process. There's no dispute that he didn't complete the process. And once he failed to have the timely original filing, he wouldn't have been able to go through steps two and three. But it's that he did have an opportunity, absolutely, to timely file. And we've presented three options for how he could have done that. He didn't take any of those steps. Just so I understand, I think we have sort of a mismatch with the district court opinion here, but I want to put that to one side and make sure I understand your position. So you are not contesting, I don't think, and I didn't see this in your brief, that if in fact this system operates so that as a result of the combination of the 90-day rule and the one at a time rule, there is a grievance that can't be filed timely, if it operated that way, that would render it practically unavailable. Your position is it doesn't operate that way. It doesn't operate that way. And under these factual circumstances, it remained available. Okay, but you are not contesting that if it were impossible to timely file within 90 days because of the one at a time rule, that at least in that instance, there would not be an available grievance. I think it would depend. These are all very fact-specific circumstances, but it's possible that there could be a case where those two rules truly did combine. Even on your theory, say someone has four grievances on days 1, 2, 3, and 4, there's no way they're going to be able to get the fourth one through within 90 days. Well, there's several options for how to get things through. I mean, it only takes 38 days to get... But if you have four, you're not going to be able to get four through in 90 days if it takes 38 days. You could have a scenario that obviously was not the case here. But what would you say would happen in that case? I think it would be a very rare case that that would happen. No doubt, but it's hypothetical. In that case, would it be... It's possible that there could be a case not presented before us today where that would happen, but I think it's critical. And then, if that happened, we would all, the state would agree, in that case, there is no available grievance process. I mean, the state would obviously want to look at the particular facts and how things played out in the particular case because there can be things like in this case, we had a moot grievance. Where you have the four grievances. And they're all valid. And they're all valid. There's no way to get them all through in 90 days. Then, are we in agreement that then there would... Are you in agreement, I guess, with your colleague that in that case, there would be no available... I believe there could be a situation like that. And that's a lot closer to the situation in Eaton, which is actually distinguishable from this case because there were options to get these grievances through the process in order to allow him an option to timely file the grievance. So let me ask you about that. Yep. You laid out what you think the options were that having read the manual, he could have gleaned that he had the power to move these through so that he would free up the ability to file his involuntary medication, right? So after he filed the kosher diet grievance, and it just sat there and didn't get moved on, what was it that he was supposed to do? And where in the manual does it tell him how to do it? So at JA-108, there's the particular provision that gives him the right to appeal de facto denials when the timeframes are not met, when there's no response. So that gives him the opportunity to pass it on, whether or not there's also a way for the prison officials to move it on. He has the power... About that, I'm sorry to interrupt, but I'm looking at JA-108, and that's subsection 5, 307A-5, is that correct? It's 307F-5. F-5, I'm sorry, F-5. And so what it says is that at any time, if it hasn't been ruled on, the absence of response shall be a denial that the inmate may appeal. So that's what you're relying on. And then it says, but the 24 hours time limit to request an appeal does not begin until the inmate receives a written denial. So explain to me how that works, because obviously he didn't receive a written denial, and was he supposed to do something to prompt them to give him the piece of paper so that he could file the written denial? So there's one piece of paper. It's specified in the policy at JA-104, and that's the DC-410, the DC-410. It's readily available in the policy. It says it will be available. They can get copies of it as much as they need. And yes, that's what he would have used to appeal. I don't even get that. I'm sorry, I don't get it. No, you go. So I want to make sure I'm understanding. The DC-410, and we have lots of examples of them here, is numbered, and it has the first page has the 1 through 19, and then the second page has 20 through 34, which has the place for the appeal. Is that a form that's available to any inmate to get? And are you saying that he should have gotten a second blank form, but only filled out the back in the absence of having received the denial for step one? So I will concede that there are not specifics in the record about exactly how that would have occurred. Yes, we're saying that the 410 is what would have been used. So first explain to me the 410. It has 1 through 19, and then it says 410 A and B, because it keeps going numerically. Is that all one document? Is it single space pages, or is it back in front? I'm trying to understand. From the Joint Appendix, it's unclear. And I'm sorry that I don't recall a site for you in the Joint Appendix. I do believe there are some examples of the DC-410 in the record. And while we're talking about forms, I just want to mention that that L-22 is not an official form that the prison system is familiar with. It's in the plaintiff's handwriting, and it appears to have been something that he created. And it's, I mean, the plaintiff filled it out. He also submitted it with his filing. So that's not, it's not. I don't understand. It's absolutely not in his handwriting. It's typed. He filled it out in his handwriting. But the part I'm reading is typed. Days remaining to submit grievance after equitable tolling of 90-day period for grievance is still pending. It's step two. I think if this case were remanded, there would be some questions about authenticity. No doubt. But why is there no actual record in this case? Understood, Your Honor. I just wanted to point out. But this court granted summary judgment. And I don't, I've just never seen anything like this. Sorry. If the court has concerns, obviously, we would accept a remand to address any of these issues. But I don't think that's necessary. Because I think that the policy itself is clear enough that there are plenty, were plenty of options for the plaintiff to move the grievances forward. Let me go back to the form that he was supposed to use. So I'm a lawyer, and I'm sitting here looking at this form. And I don't understand how this converts into a standalone appeal form. You would have to be writing in the part that says official use only, right? And I just, like, I'm baffled as to how this form works. How any inmate could pick this up and say, oh, I see. I'll just fill in here where the official is supposed to fill in some information about what happened. And then I'll write down that I'm appealing. Well, Your Honor, the point I would make is that there was no attempt to even try to appeal in any way with the form or otherwise to move that forward. Even though the policy gives a clear right to it. And at JA-11, the policy refers to that form as the form that should be used. I know none of this was even aired in front of the district court. So there's no record on this. But do you personally have any information about, like, does this happen? Is this a process that takes place regularly within the prison that inmates appeal de facto denials? I do not believe so. I mean, I think this is rare. And I don't know of any case in the record that that has happened. I mean, I can't use a form they don't have. Well, this is readily available. And my understanding is also that it's available at each prison. They have to ask for another form, even though this is supposed to use this form. They could, although they also do have, my understanding is, and this is not in the record, is that they also retain a copy of what was filed and what was submitted. So they do have that and could potentially use that also to submit an appeal. Is it fair to say that the inmate would have to infer taking those steps, asking for a new form, using the copy that he had retained, that that's not spelled out in the manual? Correct. It's fair to say that it's not spelled out in the manual. It also, the policy does provide that the inmate can also ask for assistance. And there's no indication that the plaintiff ever did that in this case. I just want to clarify, and also to your knowledge, this has never happened, that an inmate has taken an appeal from a de facto denial. I can't say that here today. I'm asking you, do you, I'm sorry, so you cannot say today? My personal knowledge, I can't say that today. This is why it is very confusing to have this come up for the first time on appeal. Okay. I do want to address a couple of other points. Counsel raised the issue of opacity, which is what the questions have been about, and claims that this was an unknowable procedure. And I think that it's important to recognize that the law in this is that that is a very high bar. The Ross case has some language that talks about what opacity means, and it talks about the fact that it has to be unknowable. And again, it's specified in the policy itself that this is an option. So that's not an unknowable option under the high bar of Ross. And availability overall is an incredibly high bar, because the PLRA was intended to be strict and mandatory. And there's been a series of cases from the Supreme Court and this court that have said this is not something where we can have judge-made exceptions because the court doesn't like the way that the prison system handled something, or they think there's some kind of equity or fairness issue. And I think that the way that the court defines availability should follow this context, because the court is making very clear that it's important not to open the floodgates. This statute was enacted to deal with a very specific problem, and it's important that the court think about how the intent of the law in defining availability and not create an exception that swallows the rule. And the court said that in several of its cases, including in Booth, in Porter. I don't know what the intent of the law was. It's specified in the Supreme Court's cases. And that was... This law, of what you all are doing. Is it in the record? Anything that reflects the intent in the record? The intent of the Prison Litigation Reform Act? The intent is you're talking about. The Prison Litigation Reform Act has been spelled out several times by the Supreme Court in terms of what the purpose of that law is. And I would point the court to Ross, as well as Jones v. Bach, and several other cases that we've cited in our brief. Which in Ross, in fact, the court, the Fourth Circuit, held that there was a special circumstances exception, and the Supreme Court overruled that and said that this is strict and mandatory, and that the intent is that there not be exceptions. This is very important in terms of managing this litigation in federal courts. Before we let you go, can I ask you the same question I asked your colleague on the other side? Where in this policy does it say that his April resubmission was untimely? I believe that it was rejected as untimely. I know it was, but on what ground? If you look at JA-182, that's the district court's order on his Rule 60 motion. And the court specifically says that it did not make a characterization of the filing of the grievance as untimely. That it found that it was ultimately rejected because more than 90 days had elapsed since the incident. And if you look at the policy language, the policy language does say that you're not allowed to submit a grievance while another one is pending, and that the submission has to occur... I'm sorry, I'm just looking for the particular provision. It's 90 days from the incident itself. Right, it says... This is what is confusing me. The policy says it's grounds for rejection if there has been a time lapse of more than 90 days between the alleged event and submission of the grievance. And here, the grievance was in fact submitted three days after the incident. And I would assume that the concern here is like a staleness concern, but you wouldn't have that concern here. Everyone was unnoticed three days in. And then, and I understand that one wasn't rejected. I can't remember what they called what they did to it. And then, it also says an inmate, in connection with the one-at-a-time rule, an inmate may submit a new grievance after a pending grievance has completed step two. And it doesn't say there, like, so long as it's within the original 90 days, or you have to do it within five days after the pending grievance complete. There's just nothing about when that sort of resubmission has to take place. So, it's just not obvious to me, at least. I just think the policy doesn't really clearly address the intersection of these two rules. I can just respond that the way that our client had interpreted this policy in this case. But we don't know that because there's no affidavit from your client saying here's how we read the policy. We've always read it this way. It may not be spelled out clearly, but everyone understands how it works. We don't know that. Your Honor is correct, but it doesn't spell that out through an affidavit. But that was how they interpret it because they rejected the resubmission in April. And I see that my time has expired. So, unless the court has further questions for me, I'll allow Dr. Kahn's counsel to address the court. Further questions? No, thank you. Any other? Thank you, Your Honor. Thank you very much. Mr. Maldonado, Ms. Maldonado. Good morning, Your Honors. May it please the court. My name is Jennifer Maldonado. And again, I'm here for Dr. Kahn, the other appellee. Obviously, these are not Dr. Kahn's procedures. He's just an employee who provides medical services to folks, such as the appellant in this situation. I would say, though, Your Honors, that obviously, the folks that I represent in these situations, which are typically nurses, doctors, physicians, assistants, they rely on the PRLA to assist them in not having to respond to fully complied with. I personally don't have any knowledge to add with respect to the interpretation policy, because that is something that folks that I represent typically do not do. However, I will say that I've handled probably 50 or 60 of these prisoner cases, and I've never seen a situation like this come up. So, I would just say that it appears— Sorry, a situation like what? I'm just curious. A situation where, number one, it doesn't appear directly in the record what happened. And that's not information that my client can provide, because they don't have access to that sort of information. And number two, with respect to the availability, I would just echo what Ms. Brennan argued in the brief, and that is that this specific appellant did appreciate, it seems to me, based on the number of grievances that were filed, that he knew how to navigate the system, and that he had the ability to access and obtain some relief. I know Ms. Brennan didn't speak specifically about this in too much detail, but for instance, one of his grievances, he filed it, and within three days, that same grievance was mooted because he actually got the diet that he wanted. So, he could have theoretically dismissed that grievance and then proceeded with these other grievances that he had. But again— Where in the record does it give him an avenue for dismissing a grievance because it's been mooted? Well, he certainly could have notified them that he was doing that. I'm not saying it's specifically set forth in the procedure itself, but most people, if they don't want to proceed with something, they can just give you notice that they're not planning to do that anymore. And he certainly did not do that. Also, while he may not have had the specific form back that we've been talking about, he certainly could have submitted a new form, as stated by Ms. Brennan. So, I just don't think that what the appellant is arguing here, that he has no availability of relief, meets what the requirements are for not complying with PLRA. I do think that Congress's intention for implementing that should be preserved so that you've got to meet the textual mandate if you want to proceed with cases such as these. And I do see that my time is almost up, and I'm happy to answer any questions, if you have them, of me. Thank you very much. Thank you. Good to have you here. Thank you. Mr. Gunning? So, with my remaining time, I want to address two points raised by the defendants. Circling back to this de facto denial option and talking about this supposed floodgates problem they've alluded to. With respect to the supposed appeal from a de facto denial, I want to emphasize that the grievance procedure, Mr. Griffin's actual experience with the process, and the prison official's verbal communications to him, did not contemplate a mechanism for him to pursue this appeal, and certainly not a mechanism that was knowable and navigable for him. In the moment, to the extent the record does not show how Mr. Griffin could have pursued this option, it's important to recognize that it was the defendant's burden, both at the summary judgment stage and based on Jones, the fact that exhaustion is an affirmative defense. It was their burden to show that Mr. Griffin failed to exhaust available administrative remedies. So, the fact that they have not created this record, a record supporting how Mr. Griffin could have possibly appealed from the absence of a response, is telling and supports that this option just was not available to Mr. Griffin. Counselor, can I? I find this case a confusing case. Page 182 of the joint appendix is the district, the end of the district court's decision on reconsideration, I guess. And it just seems clear as can be that the district court says, look, I'm not making a finding that this was untimely. I'm just saying that, as the plaintiff says, the grievance was ultimately rejected on timeliness grounds. And then he says what the problem actually is, is that although he resubmitted his grievance at step one, he didn't complete step two or three. That was his failure to exhaust. But I heard your colleague today say, we're conceding he could not go through step two or three on the resubmitted grievance. So, we've got the district court telling us why he granted summary judgment. That is now concededly not a ground for granting summary judgment. So, what are we supposed to do? What do you think we should do? So, we would agree that the district court's decision was error and was unsupported by the record as demonstrated by the defense concession here. So, at a minimum, we would accept remand. However, our position is further that on this record, on the record based on the evidence presented by both sides, administrative remedies were not available for Mr. Griffin's involuntary sedation. We would accept a remand for what? That is the difficult question. That's part of the reason I'm sure Judge Harris asked the question. What's your position as to what you want? So, our position... We're entitled to that. Yes, Your Honor. So, our position is that this court should reverse the grant of summary judgment on exhaustion grounds and that remand is inappropriate for further factual development on the exhaustion issue. Remand is inappropriate. That is our position, yes, Your Honor. So, you don't want a remand? We don't want... You're against a remand? On the exhaustion issue, yes, Your Honor. You're against a remand? Yes, yes, Your Honor. You want us to enter summary judgment in favor of your client? Sorry, no, I apologize. I apologize, Your Honor. We do want remand for the case to move forward. We don't believe that remand is appropriate just to go back to this exhaustion issue because there has been development of the... Do you want a finding that there's an exception to exhaustion and the case can go forward to trial? Yes, Your Honor. And so, the way you would get there without any factual development of this record is to say there's no factual development of the record. It was their burden. They didn't develop a record to show that this was an available system. Yes, yes, Your Honor. And I apologize, my... Have you made that as clear as you can make it? What you want? I'll try just one more time to make sure, Your Honors. Yes, we believe it was the defendant's burden to prove that there were... You're explaining everything. I'm asking you what you want. Tell us what you want us to do. Yes, Your Honor. We want the court to first reverse the district court's grant of summary judgment on exhaustion grounds and remand not for further factual development on the exhaustion issue, but remand for this case to go forward on the merits. That's what you want?  And what? I apologize. I understand my time has expired. Have you got something else to tell me about what you want? No, Your Honor. I was hoping to just briefly address their floodgates argument. What? Their floodgates argument or... Their argument that the ramifications of this case would open the floodgates. And that is just not supported in this record. As this court recognized in Moss... There's no floodgates going to be open. No floodgates will be open. The ramifications are actually quite modest in this case. We don't want any floodgates. That's correct, Your Honor. We don't want to open the floodgates either. That's correct, Your Honor. And there wouldn't be any floodgates. We don't want to open the floodgates. Yes, Your Honor. Right. We'll agree with that. I will. Anyway. Yes, Your Honor. But I want to ask Ms. Brannon. She mentioned something about a remand. You can sit down. Yes, Your Honor. Ms. Brannon, do you have anything further to say about what you want? Your Honor, I believe that the court should affirm and that a remand is unnecessary. However, that would be my first... Can I just ask one? How can we affirm when the district court found exhaustion because he didn't go through steps two and three after his resubmission was rejected and you told us there was no step two or three? How am I going to affirm? So I'm not conceding that the district court had error in that finding. I think that the court properly found that it didn't go through, but the reason that it didn't go through was there was no timely filing at step one. And that's a responsibility. Let me ask you, hypothetically, if I read the district court, and now I've closed my appendix, but if I read... Here it is. As previously noted, although he resubmitted his grievance at step one, he did not complete step two or three. Accordingly, his motion for relief is denied. If I read that as the district court saying the problem was that although he resubmitted his grievance at step one, he did not complete step two or three. If I read it that way, you have conceded there was no step two or three. So how can I affirm? I think you follow Woodford and you follow Moore, which says that the responsibility was on the PLRA plaintiff to file timely in order to be able to complete all the steps. The district court said, I'm not finding that it was untimely. So if that's the theory you want me to... So I guess you want me to say the district court was wrong, but I can affirm on this alternative ground. I think that the district court was saying that he could have submitted it timely in some way or to not get it rejected at step one, in which case he could have gone through and that was his responsibility in the process. I heard you say that you would accept a remand. I would accept a remand if the court believes it's necessary. Go ahead, now tell us what? I prefer that the court affirms and I don't... You said you would accept a remand. What would you accept a remand for? Further factual findings about exhaustion if necessary, if the court believes that's necessary. Okay, that's what I want you to specify. Thank you, your honor. Thank you all. Thank all of you. And we appreciate very much your help in this case. Appreciate your work and thank you.
judges: Robert B. King, Pamela A. Harris, Michael Stefan Nachmanoff